Scott D. Lawrence, Tex. Bar No. 24087896
scott.lawrence@wickphillips.com
WICK PHILLIPS GOULD & MARTIN, LLP
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Phone: (817) 332-7788
Fax: (817) 332-7789

COUNSEL FOR DEBTOR AND
DEBTOR IN POSSESSION

Jason M. Rudd, Tex. Bar No. 24028786
jason.rudd@wickphillips.com
Catherine A. Curtis, Tex. Bar No. 24095708
catherine.curtis@wickphillips.com
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Phone: (214) 692-6200
Fax: (214) 692-6255

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 23-40073** |
| **JESS HALL'S SERENDIPITY, LLC,** | § | |
| | § | **Chapter 11** |
| **DEBTOR.** | § | |

## DEBTOR'S CHAPTER 11 SUBCHAPTER V PLAN

**WICK PHILLIPS GOULD & MARTIN, LLP**

Scott D. Lawrence, Tex. Bar No. 24087896
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
scott.lawrence@wickphillips.com

and

Jason M. Rudd, Tex. Bar No. 24028786
Catherine A. Curtis, Tex. Bar No. 24095708
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
jason.rudd@wickphillips.com
catherine.curtis@wickphillips.com

**COUNSEL FOR DEBTOR AND DEBTOR IN POSSESSION**

Dated: April 10, 2023

## SUMMARY OF PLAN

The Debtor's Plan proposes to administer the Debtor's assets to maximize value for creditors, including the liquidation and distribution of resulting proceeds from cash on hand, production machinery, intellectual property licensing, and causes of action against certain third parties. The Debtor estimates distributions under this Plan will exceed $600,000, generating a return to general unsecured creditors estimated at 15%. The following is a summary of proposed creditor treatment.

| Class | Description | Entitled to Vote | Estimated Claims | Approx. Recovery | Treatment |
|-------|-------------|------------------|------------------|------------------|-----------|
| **Class 1** | Priority Non-Tax Claims | No | $0.00 | NA | Full payment of Allowed Claim in Cash. |
| **Class 2** | Secured Claims | Yes | $0.00 | 100% | At the Debtor's choice, (i) the Collateral securing such Allowed Secured Claim; (ii) payment in Cash in full on the Effective Date of the Allowed Secured Claim, or (iii) other treatment that renders such Allowed Secured Claim unimpaired. |
| **Class 3** | Convenience Claims | Yes | $55,000 | 25% | Payment of 25% of Allowed Convenience Claim within 120 days of Effective Date. |
| **Class 4** | General Unsecured Claims | Yes | $2.4 million | 15% | Pro Rata share of Reorganized Debtor's Disposable Income for three (3) years following the Effective Date. |
| **Class 5** | Equity Interests | Yes | NA | 0% | Pro Rata share of all Disposable Income, if any, remaining after payment in full of Class 4 Claims. |

The Debtor is proud to present this Plan. The Plan represents the culmination of months of effort to maximize returns to creditors. The Plan's projected returns exceed those of a hypothetical chapter 7 liquidation and represent the benefit of the Debtor's CRO's depth of experience with this company and its stakeholders, including the Debtor's insiders, who have made significant contributions to ensure the best possible returns to creditors.

Under the CRO's management, the Debtor preserved and maximized the value of its assets during the months leading up to bankruptcy. After a potential sale of the Debtor's assets did not close, the CRO negotiated with the Debtor's landlords, marketed its assets to interested parties, and reduced the Debtor's expenses. The CRO's lengthy prepetition experience with the Debtor enabled him to hit the ground running in this case with no wasted time or effort to "come up to speed" on the Debtor's unique assets and needs. The result of the CRO's efforts, this Plan, is a good result for creditors given the Debtor's circumstances.

Since entering bankruptcy, the Debtor implemented a multi-year licensing deal of the Debtor's branded seasoned salt blends to generate a projected additional $90,000 of disposable income for distribution to creditors. The CRO has negotiated with the Debtor's insiders to release more than $100,000 of their claims and increase distributions to non-insider creditors. The CRO continues to pursue the Debtor's valuable causes of action against third parties and a robust liquidation of the Debtor's production equipment to maximize value for all creditors in this Case, with estimated value from these activities exceeding $600,000.

The Plan provides for insiders to release more than $186,000 of claims they could assert against the estate in exchange for the Debtor releasing causes of action against the insiders with far less value. Importantly, there is no release of any third-party claims, consistent with the applicable 5th circuit case law. The Plan also proposes to reduce the claim of DFW SB Industrial, LLC, one of the largest unsecured claimants against the estate, by more than $122,000, in exchange for settling potential litigation related to the claim.

Simply put, the CRO's early and extensive familiarity with the Debtor's business provided him with a unique opportunity to maximize value to creditors by resolving insider claims and causes of action and other claims with minimal expense. Between these settlements and the Debtor's licensing deal, this Plan builds on unique opportunities available to the Debtor to provide the maximum recovery available to creditors in this case.

The Debtor urges you to use the ballot accompanying this Plan to vote to accept the Plan to ensure you receive the greatest possible recovery on your claims.

_____

## TABLE OF CONTENTS

**ARTICLE I. SECTION 1190(1) BACKGROUND INFORMATION** .......................................... 1
1.1    Debtor's Business Operations ................................................................................1
1.2    Debtor's Financial Crisis ......................................................................................1
1.3    Debtor's Bankruptcy Filing ..................................................................................2
**ARTICLE II. DEFINITIONS AND INTERPRETATION** .................................................. 3
2.1    Definitions ...........................................................................................................3
2.2    Rules of Interpretation and Construction ..............................................................8
**ARTICLE III. TREATMENT OF UNCLASSIFIED CLAIMS** ........................................... 9
3.1    Administrative Expense Claims .............................................................................9
3.2    Fee Claims ...........................................................................................................10
3.3    Priority Tax Claims ..............................................................................................10
**ARTICLE IV. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ................ 10
**ARTICLE V. TREATMENT OF CLAIMS AND EQUITY INTERESTS** .......................... 11
5.1    Class 1 – Priority Non-Tax Claims .......................................................................11
5.2    Class 2 – Secured Claims .....................................................................................11
5.3    Class 3 – General Unsecured Claims ....................................................................11
5.4    Class 4 – Equity Interests ....................................................................................11
**ARTICLE VI. IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN;
EFFECT OF REJECTION BY ONE OR MORE CLASSES** ............................................... 12
6.1    Classes Entitled to Vote .......................................................................................12
6.2    Class Acceptance Requirement .............................................................................12
6.3    Cramdown ...........................................................................................................12
6.4    Elimination of Classes .........................................................................................12
**ARTICLE VII. MEANS OF IMPLEMENTATION** ........................................................... 12
7.1    Settlement ...........................................................................................................12
7.2    Preservation of Rights of Action; Settlement of Litigation Claims ........................15
7.3    Funding for Litigation of Causes of Action ...........................................................15
7.4    General Settlement of Claims ...............................................................................15
7.5    Restructuring Transactions ..................................................................................16
7.6    Corporate Action .................................................................................................16
7.7    Vesting of Assets .................................................................................................16
7.8    Effectuating Documents; Further Transactions .....................................................16
7.9    Exemption from Certain Transfer Taxes ...............................................................16
7.10    Cooperation with the Reorganized Debtor ...........................................................17
**ARTICLE VIII. DISTRIBUTIONS** ................................................................................. 17
8.1    Date of Distributions ...........................................................................................17
8.2    Sources of Distributable Cash ..............................................................................17
8.3    Reorganized Debtor .............................................................................................17
8.4    Record Date for Distributions ..............................................................................19
8.5    Recipients of Distributions ..................................................................................19
8.6    Delivery of Distributions; Unclaimed Property .....................................................19
8.7    Means of Payment ...............................................................................................20
8.8    Setoffs and Recoupment ......................................................................................20
8.9    Distributions After Effective Date ........................................................................20

| | | |
|---|---|---|
| 8.10 | Withholding and Reporting Requirements. | 20 |
| 8.11 | No Postpetition Interest. | 20 |
| 8.12 | Time Bar to Payments. | 20 |
| 8.13 | De Minimis Distributions. | 21 |

## ARTICLE IX. PROCEDURES FOR RESOLVING AND  TREATING DISPUTED CLAIMS ..... 21

| | | |
|---|---|---|
| 9.1 | Objections to Claims. | 21 |
| 9.2 | No Distributions Pending Allowance. | 21 |
| 9.3 | Distributions After Allowance. | 21 |
| 9.4 | Disallowance of Late Filed Claims. | 21 |

## ARTICLE X. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 22

| | | |
|---|---|---|
| 10.1 | Rejection of Contracts and Leases. | 22 |
| 10.2 | Inclusiveness. | 22 |
| 10.3 | Claims Based on Rejection of Executory Contracts or Unexpired Leases. | 22 |

## ARTICLE XI. CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN ..... 22

| | | |
|---|---|---|
| 11.1 | Conditions to Effective Date of Plan. | 22 |
| 11.2 | Waiver of Conditions Precedent. | 23 |
| 11.3 | Effect of Failure of Conditions. | 23 |
| 11.4 | Reservation of Rights. | 23 |

## ARTICLE XII. EFFECT OF CONSUMMATION ..... 23

| | | |
|---|---|---|
| 12.1 | Discharge of Claims and Interests in the Debtor. | 23 |
| 12.2 | Injunction against Interference with Plan. | 24 |
| 12.3 | Exculpation. | 24 |
| 12.4 | Debtor and Estate Releases | 24 |
| 12.5 | Injunction and Stay. | 25 |
| 12.6 | Preservation of Claims. | 26 |
| 12.7 | Compromise of Controversies. | 26 |

## ARTICLE XIII. RETENTION OF JURISDICTION ..... 26

## ARTICLE XIV. MISCELLANEOUS ..... 28

| | | |
|---|---|---|
| 14.1 | Payment of Statutory Fees. | 28 |
| 14.2 | Filing of Additional Documents. | 28 |
| 14.3 | Schedules, Exhibits and Plan Supplement Incorporated. | 28 |
| 14.4 | Amendment or Modification of the Plan. | 28 |
| 14.5 | Inconsistency. | 28 |
| 14.6 | Exemption from Certain Transfer Taxes. | Error! Bookmark not defined. |
| 14.7 | Expedited Tax Determination. | 28 |
| 14.8 | Binding Effect. | 29 |
| 14.9 | Severability. | 29 |
| 14.10 | No Payment of Attorneys' Fees. | 29 |
| 14.11 | Notices. | 29 |
| 14.12 | Governing Law. | 30 |

Debtor Jess Hall's Serendipity, LLC proposes the following Chapter 11 Plan pursuant to section 1189(a) of the Bankruptcy Code.

## ARTICLE I. SECTION 1190(1) BACKGROUND INFORMATION

### 1.1    Debtor's Business Operations

Jess Hall's Serendipity, LLC ("Debtor") is a Texas limited liability company governed by the Company Agreement for Jess Hall's Serendipity, LLC dated July 16, 2013, as amended by the First Amendment to the Company Agreement of Jess Hall's Serendipity, LLC, dated December 12, 2017. The Debtor was managed primarily by George "Dub" Hall, as President. Beginning in April 2022, after the former CFO took a new job, the Debtor hired Brian Crisp and his firm, Lain Faulkner & Co., P.C., to provide accounting support services. In October 2022, the Debtor hired Mr. Crisp to be the CRO and to lead the company through its current winddown process.

The Debtor manufactured and filled single serving and small containers of spices, sauces, and similar food items typically offered in restaurants and packaged foods. The Debtor sold packages of its namesake spice blend, Jess Hall's Serendipity, to restaurants primarily located in Texas. More recently, the Debtor expanded its business to sell spice blend and sauce packets to packaged food manufacturers, most notably Hello Fresh, which manufactures meal kits accompanied by step-by-step recipes and fresh, pre-portioned ingredients intended to be prepared and consumed in customers' homes.

The Debtor expanded its business to meet growing orders from Hello Fresh, including purchasing new equipment, hiring new employees, leasing an expanded manufacturing space, and other growth initiatives. At its peak in mid-2021, the Debtor employed approximately fifty employees in two locations in Fort Worth, Texas.

### 1.2    Debtor's Financial Crisis

In late 2021, Hello Fresh requested a quote from the Debtor for a large new order. At the time, rapidly rising inflation increased the Debtor's costs for component goods. The Debtor aggressively pursued Hello Fresh's business, searching for options to hold down costs and provide attractive pricing. Ultimately, the pricing the Debtor could offer Hello Fresh on the new order represented a major increase in pricing over prior orders, and Hello Fresh transferred its orders to an alternative supplier. Although the Debtor continued servicing its remaining customers, the loss of Hello Fresh's business made the Debtor's existing business model unsustainable.

The Debtor's management sought alternatives to shutting down. In particular, the Debtor's management reached out to industry contacts and potential strategic partners to partner with the Debtor or acquire the Debtor's operations. After a thorough marketing process, the Debtor's management failed to locate a viable transaction to keep the Debtor operating as a going-concern.

The Debtor initiated wind-down operations, completing its remaining Hello Fresh work. The Debtor notified its employees and released the majority of its workforce effective on or about April 29, 2022, keeping a few employees for wind-down activities, including finalizing and shipping remaining finished goods to customers, collecting accounts receivable, and mothballing the Debtor's equipment.

During this time, Frost Bank held the Debtor's principal debt, secured with substantially all of the Debtor's assets. Thus, the Debtor dedicated proceeds to the repayment of its secured debt to Frost Bank. Frost Bank provided the Debtor's revolving line of credit, as well as term financing supporting the Debtor's expansion into its second facility and acquisition of equipment. By timely winding down the Debtor's business, reducing its operating costs, and continuing to ship goods and collect accounts receivable, the Debtor successfully repaid Frost Bank in full by early June 2022, leaving the balance of the Debtor's cash on hand, accounts receivable, and equipment value unencumbered and available to repay unsecured creditors.

In early May 2022, the Debtor negotiated with Clifco Spice Sales, Inc. ("Clifco"), a Burleson-based spice packager and distributor. Clifco indicated an interest in purchasing substantially all of the Debtor's assets, including a willingness to operate and maintain the Debtor's facilities, hire some of the Debtor's former employees, and fulfill orders from the Debtor's customers still interested in doing business with the Debtor. The Debtor and Clifco executed an agreement effective as of May 19, 2022 that transitioned operations to Clifco on an interim basis (the "Clifco Operating Agreement"), while the parties negotiated a sale transaction. Clifco operated the Debtor's business under the Clifco Operating Agreement from May through October 2022, without the consummation of a sale. The Debtor determined that Clifco intended to profit from operating the Debtor's business but would never consummate a reasonable purchase and terminated the Clifco Operating Agreement. Clifco still owes the Debtor for the use of the Debtor's inventory, for unreimbursed costs during this period, and other damages. The Plan provides that the Debtor will assert and monetize its causes of action against Clifco and distribute proceeds to creditors.

Once the Debtor terminated the Clifco Operating Agreement, the Debtors commenced further wind-down operations, seeking to minimize additional costs and liquidate inventory, furniture, and equipment for the benefit of the Debtor's creditors. In October 2022, the Debtor hired Brian Crisp of Lain Faulkner, Inc. to be its Chief Restructuring Officer, CRO, and Mr. Crisp continues the wind-down of the Debtor's business with the assistance of the Debtor's managers.

### 1.3    Debtor's Bankruptcy Filing

The Debtor filed a voluntary petition under subchapter V of chapter 11 of the Bankruptcy Code with the Bankruptcy Court on January 9, 2023 (the "Petition Date"). The Debtor remains in possession of its property and manages its affairs as a debtor in possession pursuant to 11 U.S.C. §§1107 and 1108. Behrooz P. Vida serves as the Debtor's subchapter V trustee pursuant to Bankruptcy Code section 1183 (The "Trustee").

After filing the case, the United States Trustee's office objected to the Debtor's choice to proceed under subchapter V and filed a motion to convert the case. The Debtor opposed these efforts successfully and remains in possession of its assets and administers the Debtor's bankruptcy estate.

The Debtor filed this case to preserve and maximize the value of its assets and provide an appropriate distribution plan for the benefit of all creditors. In this Plan, the Debtor proposes to pay existing debts from the proceeds of sales of its assets, prosecution of causes of action, and any other value and income the Debtor can generate from its assets. The Debtor believes the terms of

this Plan will maximize distributions to the creditors of and interest holders in the Debtor. To the extent the Plan is opposed, the Debtor is seeking the confirmation of this Plan as a non-consensual plan as set forth in section 6.3 of this Plan.

A Liquidation Analysis is attached hereto as **__Exhibit A__**. The Liquidation Analysis constitutes a Plan Document as contemplated in Article II.B. The Debtor, led by the CRO, proposes this Plan to manage and liquidate its assets for the benefit of creditors. The Plan includes future income from licensing the Debtor's existing intellectual property rights, which would not be available in a chapter 7 liquidation. Additionally, the CRO's existing familiarity with the Debtor and its business provides various efficiencies not available to a chapter 7 trustee. The Liquidation Analysis reflects these efficiencies, and others, that provide the basis for the CRO's determination that this Plan provides the best available recoveries to creditors.

This Plan is proposed under subchapter V of chapter 11 of the Bankruptcy Code. As such, the Plan dedicates all of the Debtor's disposable income for the next three years to the repayment of the Debtor's creditors. To achieve this, the CRO has negotiated a license and sale of the Debtor's intellectual property, a settlement with the Debtor's insiders, asserting causes of action belonging to the Debtor, and liquidating the Debtor's valuable production equipment, all to generate cash to distribute to creditors.

Creditors are generally entitled to vote to accept of reject the Plan. The Debtor seeks acceptance from all classes of creditors, but even if one or more classes reject the Plan, the Bankruptcy Court may still confirm the Plan. Section 1191 of the Bankruptcy Code sets forth the requirements the Plan must meet for the Bankruptcy Court to confirm the Plan, including if not all classes vote to accept the Plan.

**The Debtor believes that the Plan satisfies all the applicable requirements of section 1191 of the Bankruptcy Code, including that the Plan (i) does not discriminate unfairly, (ii) is fair and equitable to all classes, and (iii) is in the best interests of the Debtor's creditors. The Debtor supports confirmation of the Plan and urges all holders of Impaired Claims entitled to vote to accept the Plan.**

## ARTICLE II. DEFINITIONS AND INTERPRETATION

### 2.1    Definitions

For the purpose of this Plan, the following terms shall have the respective meanings set forth below:

*Action* means any claim, action, cause of action, demand, lawsuit, arbitration, notice of violation, proceeding, litigation, citation, or summons, whether civil, criminal, administrative, regulatory, or otherwise, whether at law or in equity.

*Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Case that is Allowed pursuant to sections 503(b) or 507 of the Bankruptcy Code, including, without limitation, (i) any fees or charges assessed against the Estate under 28 U.S.C. § 1930, (ii) Fee Claims, and (iii) other Administrative Expense Claims as may be ordered and Allowed by the Bankruptcy Court.

*Allowed* means, with reference to any Claim or Equity Interest, (i) for which a proof of claim or proof of interest has been filed and as to which no objection has been interposed on or before the Objection Deadline or such other applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (ii) which appears in the Debtor's Schedules and is not listed as contingent, liquidated or disputed, (iii) which is allowed by Final Order of the Bankruptcy Court, or (iv) which is expressly allowed under this Plan.

*Avoidance Actions* means Actions arising under sections 502, 510, 541, 542, 543, 544, 545, 547 through and including 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Actions, and which may be recovered pursuant to section 550 of the Bankruptcy Code.

*Ballot* means the ballot provided to holders of Claims or Equity Interests to indicate their votes to accept or reject the Plan.

*Bankruptcy Code* means title 11 of the United States Code, as amended from time to time.

*Bankruptcy Court* means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or any other court of the United States having jurisdiction over the Chapter 11 Case.

*Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended and in effect from time to time.

*Bar Date* means the last date to file proofs of claim or interest against the Debtor, which was or will be (i) March 20, 2023 for all creditors except Governmental Units and (ii) July 10, 2023 for Governmental Units.

*Business Day* means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

*Cash* means legal tender of the United States of America.

*Causes of Action* is defined in Section 12.6 of this Plan.

*Chapter 11 Case* means the above-captioned chapter 11 bankruptcy case.

*Claim* means a claim against the Debtor or the Estate within the meaning of section 101(5) of the Bankruptcy Code.

*Class* means any group of Claims or Equity Interests classified by this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

*Collateral* means any property or interest in property of the Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or

other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state or federal law.

*Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

*Confirmation Hearing* means the hearing conducted by the Bankruptcy Court pursuant to sections 1128(a) and 1129 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

*Confirmation Order* means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

*Completion Date* means the first Business Date that is three (3) years following the Effective Date.

*Convenience Claim* means any Allowed Claim that would otherwise be an Allowed General Unsecured Claim in an Allowed amount that is greater than $0 but less than or equal to $5,000, provided that a holder of an Allowed General Unsecured Claim in excess of $5,000 may irrevocably elect in writing submitted to the Debtor or Reorganized Debtor to have such Claim irrevocably reduced to $5,000 and treated as a Convenience Claim for the purposes of the Plan, in full and final satisfaction of such Claim.

*Convenience Claim Election* means an irrevocable election in writing submitted to the Debtor or Reorganized Debtor by the holder of a General Unsecured Claim accepting treatment as a Convenience Claim.

*CRO* means the Debtor's Chief Restructuring Officer and Sole Director, Brian Crisp.

*Debtor* means Jess Hall's Serendipity, LLC, in its capacity as chapter 11 debtor.

*Disallowed Claim or Equity Interest* means any Claim or Equity Interest, or portion thereof that is not an Allowed Claim, an Allowed Equity Interest, or a Disputed Claim or Disputed Equity Interest.

*Disposable Income* means "disposable income" as defined in 11 U.S.C. § 1191(d), and includes Cash realized from Causes of Action and from the liquidation of the Debtor's assets, minus the Reorganized Debtor's reasonable and necessary fees, costs, and expenses attendant to liquidating its assets during the three (3) years beginning on the Effective Date.

*Disputed Claim or Equity Interest* means, with respect to a Claim or Equity Interest, such Claim or Equity Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) with respect to which the Debtor or Reorganized Debtor or any party in interest has interposed a timely objection (as a contested matter, adversary proceeding, or otherwise) or request for estimation prior to the Objection Deadline in accordance with the Plan or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the Effective Date.

***Distribution Date*** means the date, occurring on or as soon as practicable after the Effective Date, on which the Reorganized Debtor first makes distributions to holders of Allowed Claims as provided in the Plan.

***Distribution Record Date*** means the record date for purposes of receiving distributions under the Plan on account of Allowed Claims, which shall be the Confirmation Date.

***Effective Date*** means the first Business Day on which all the conditions precedent to the effectiveness of the Plan specified in Section 11.1 of this Plan shall have been satisfied or waived as provided in Section 11.2 of this Plan.

***Equity Interest*** means any membership interest in the Debtor or "equity security" of the Debtor, as that term is defined in section 101(16) of the Bankruptcy Code.

***Estate*** means the Debtor's estate as created under section 541 of the Bankruptcy Code.

***Exculpated Parties*** means the Debtor, the Reorganized Debtor, Lain Faulkner & Co., P.C., Brian Crisp in his capacity as Chief Restructuring Officer of the Debtor, and Wick Phillips Gould & Martin, LLP, in its capacity as Chapter 11 Bankruptcy Counsel to the Debtor.

***Fee Claim*** means any Claim by a Professional Person under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Chapter 11 Case.

***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

***General Unsecured Claim*** means any Claim against the Debtor that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, or an Equity Interest. General Unsecured Claim includes any unsecured claim held by the holder of an Other Secured Claim as a result of the operation of section 506(a)(1) of the Bankruptcy Code.

***Governmental Unit*** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

***Insider*** means any Person who is an "insider" as such term is defined in section 101(31) of the Bankruptcy Code, or who may otherwise be determined to be an "insider" under section 101(31) of the Bankruptcy Code by a court of competent jurisdiction.

***GDH*** means George "Dub" Hall, individually or in his capacity as Manager of the Debtor, as applicable.

***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

***Local Rules*** means the Bankruptcy Local Rules of the United States Bankruptcy Court for the Northern District of Texas, as the same may be amended or modified from time to time.

***Non-Insider*** means a Person who is not an Insider.

***Objection Deadline*** means the later of (a) one hundred twenty (120) days after the Effective Date and (b) such later date as may be ordered by the Bankruptcy Court prior to the expiration of such one hundred twenty (120) day period, upon motion.

***Petition Date*** means January 9, 2023.

***Person*** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

***Plan*** means this Chapter 11 Plan, as the same may be amended, supplemented or otherwise modified from time to time, including any exhibits and schedules hereto.

***Plan Administrator*** means the Debtor's post-confirmation Plan Administrator and Sole Director, Brian Crisp of Lain Faulkner & Co., P.C.

***Priority Non-Tax Claim*** means any Claim that is entitled to priority in payment pursuant to sections 507(a)(4), (5), (6) or (7) of the Bankruptcy Code and that is not an Administrative Expense Claim or a Priority Tax Claim.

***Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

***Professional Person*** means any Person retained or to be compensated by the Debtor pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

***Pro Rata*** means the proportion that the amount of an Allowed Claim or Allowed Equity Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Equity Interests in such Class.

***Released Parties*** means, collectively, GDH, R. Gantt Bumstead, George M. Young, Jr., William Rodgers, Crawford Rodgers, GMY Capital Partners LP, OSR Energy, LLC, GMY-FW No. 2, LP, Serendipity Capital Partners, LP, RGB Ventures, LLC, and their predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals,

shareholders, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees.

*Releasing Parties* means the Debtor, the Reorganized Debtor, and the Estate on behalf of themselves and their respective successors, assigns, and representatives and any and all other entities that may purport to assert any cause of action derivatively, by or through the foregoing entities, as defined in Section 12.4 of this Plan.

*Reorganized Debtor* means Jess Hall's Serendipity, LLC, following the Effective Date of this Plan.

*Schedules* means, collectively, Schedules A through H and the Statement of Financial Affairs, as filed by the Debtor in the Chapter 11 Case at ECF Nos. 31, 32 & 33, as the same may have been or may be amended from time to time.

*Secured Claim* means a Claim secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which the Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by the Debtor and the holder of such Claim.

*Subordinated Claim* means any Claim or Equity Interest that is subject to (a) subordination under section 510 of the Bankruptcy Code or any other statute, (b) contractual subordination, (c) equitable subordination as determined by the Bankruptcy Court in a Final Order, including, without limitation, any Claim or Equity Interest (i) for or arising from the rescission of a purchase, sale, issuance, or offer of a Security of the Debtor; (ii) for damages arising from the purchase or sale of such a Security; or (iii) for reimbursement, indemnification, or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim or Equity Interest, (d) a Claim or Equity Interest that is subordinated by agreement of the holder, or (e) any Claim or Equity Interest acquired by a holder of a Claim or Equity Interest that is subordinated under this Plan.

*Suffolk Landlord* means DFW SB Industrial, LLC.

*Suffolk Landlord Claim* means the allowed nonpriority general unsecured claim of DFW SB Industrial, LLC in the amount of $253,539.73.

## 2.2   Rules of Interpretation and Construction

(a)   Interpretation. Unless otherwise specified herein, all section, article, and exhibit references in the Plan are to the respective section in, article of, and exhibit to, the Plan, as the same may be amended, waived or modified from time to time. All headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

(b)   Construction and Application of Bankruptcy Code Definitions. Unless otherwise defined herein, words and terms defined in section 101 of the Bankruptcy

Code shall have the same meanings when used in the Plan. Words or terms used but not defined herein shall have the meanings ascribed to such terms or words, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

(c)     Other Terms. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan.

(d)     Time.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE III. TREATMENT OF UNCLASSIFIED CLAIMS

### 3.1     Administrative Expense Claims

All Administrative Expense Claims against the Estate, other than Fee Claims, shall be treated as follows:

(a)     Time for Filing. All holders of Administrative Expense Claims, other than Professional Persons holding Fee Claims, shall file with the Bankruptcy Court a request for payment of such Claims within thirty (30) days after the Effective Date. Contemporaneously with filing with the Bankruptcy Court, any such request must be served on the Reorganized Debtor and its counsel, and must, at a minimum, set forth (i) the name of the holder of the Administrative Expense Claim; (ii) the amount of the Administrative Expense Claim; and (iii) the basis for the Administrative Expense Claim.  A failure to file any such request in a timely fashion will result in the Administrative Expense Claim in question being discharged and its holder forever barred from asserting such Administrative Expense Claim against the Estate or any other Person.

(b)     Allowance. An Administrative Expense Claim for which a request for payment has been properly filed shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is the later of (i) sixty (60) days after the Effective Date or (ii) thirty (30) days after the request for payment of such Administrative Expense Claim is filed. If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

(c)     Payment. Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment of such Claim, each holder of an Allowed Administrative Expense Claim shall receive, on account of and in full satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Administrative Expense Claim on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) ten (10) days after entry of an order by the Bankruptcy Court allowing such Administrative Expense Claim. The Debtor or Reorganized Debtor, as applicable, shall pay Allowed Administrative Expense

Claims from cash on hand or as otherwise agreed by the holder of the Allowed Administrative Expense Claim and the Debtor or the Reorganized Debtor, as applicable.

### 3.2    Fee Claims

Every Professional Person holding a Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order approving the same shall file a final application for payment of fees and reimbursement of expenses no later than the date that is thirty (30) days after the Effective Date. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. All final fee applications shall be set for hearing on the same day, as the Bankruptcy Court's calendar permits, after consultation with counsel to the Debtor. Allowed Fee Claims shall be paid by the Debtor or Reorganized Debtor, as applicable.

### 3.3    Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim has agreed or agrees to a different treatment of such Claim, each holder of an Allowed Priority Tax Claim shall receive on (or as soon as reasonably practicable after) the Effective Date, Cash in an amount equal to the Allowed amount of such Claim. To the extent the holder of an Allowed Priority Tax Claim has a Lien on Estate property, such Lien shall remain in place until such Allowed Priority Tax Claim has been paid in full.

## ARTICLE IV. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

All Claims against, and Equity Interests in, the Debtor are classified for all purposes, including voting, confirmation, and distribution, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | No | No (deemed to accept) |
| Class 2 | Secured Claims | Yes | Yes |
| Class 3 | Convenience Claims | Yes | Yes |
| Class 4 | General Unsecured Claims | Yes | Yes |
| Class 5 | Equity Interests | Yes | Yes |

Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting or receiving distributions under the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code. Instead, all such Claims shall be treated separately as unclassified claims on the terms previously set forth in Article II of this Plan.

## ARTICLE V. TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 5.1      Class 1 – Priority Non-Tax Claims

Except to the extent that a holder of an Allowed Priority Non-Tax Claim against the Estate agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, payment in full in by the Debtor or Reorganized Debtor, as applicable, on (or as soon as reasonably practicable after) the later of (i) the Effective Date or (ii) ten (10) days after such Priority Non-Tax Claim becomes Allowed.

### 5.2      Class 2 – Secured Claims

On the Effective Date (or as soon as reasonably practicable thereafter), except to the extent that a holder of an Allowed Secured Claim against the Estate agrees to less favorable treatment, each holder of an Allowed Secured Claim shall, at the Debtor's option, receive one of the following treatments: (i) the Collateral securing such Allowed Secured Claim; (ii) payment in Cash in full on the Effective Date of the Allowed Secured Claim, or (iii) other treatment that renders such Allowed Secured Claim unimpaired in accordance with section 1124 of the Bankruptcy Code.

### 5.3      Class 3 - Convenience Claims

(a)      A Convenience Claim will be deemed Allowed, and not subject to any counterclaim, defense, offset, or reduction of any kind if it is (i) set forth in a timely filed Proof of Claim that is not validly objected to, (ii) listed on the Schedules and not listed as disputed, contingent, or unliquidated, or (iii) set forth in a valid Convenience Claim Election, in each case in an amount not more than $5,000.

(b)      Except to the extent that a holder of an Allowed Convenience Claim against the Estate agrees to a different treatment, each holder of a Convenience Claim shall receive from the Reorganized Debtor one distribution of twenty-five percent (25%) of the Allowed Amount of such Convenience Claim, with such distribution to be made on or before one-hundred twenty (120) days after the Effective Date.

### 5.4      Class 4 – General Unsecured Claims

Except to the extent that a holder of an Allowed General Unsecured Claim against the Estate agrees to a different treatment, each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction of such Claim, a share of the Debtor's Disposable Income Pro Rata with all other Allowed General Unsecured Claims, until the earlier of (i) the Completion Date; or (ii) the Allowed amount of all General Unsecured Claims is paid in full.

### 5.5      Class 5 – Equity Interests

Except to the extent that a holder of an Allowed Equity Interest in the Debtor agrees to a different treatment, each holder of an Allowed Equity Interest shall receive a Pro Rata share of Disposable Income remaining after payment in full to all holders of Allowed Claims in Classes 1, 2,  3, and 4. On the Effective Date, the holders of Allowed Equity Interests shall be revested with their ownership interests in the Reorganized Debtor, in the same proportion as each held in the

Debtor on the day before the Petition Date, without further corporate action or Bankruptcy Court order.

## ARTICLE VI. IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES

### 6.1    Classes Entitled to Vote

The holders of Claims in Class 1 are unimpaired, conclusively deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. The holders of claims in Classes 2, 3, and 4 are impaired and entitled to vote to accept or reject the Plan.

### 6.2    Class Acceptance Requirement

A Class of impaired Claims shall have accepted the Plan if the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Claims in such Class who have voted on the Plan have voted to accept the Plan. A Class of impaired Equity Interests shall have accepted the Plan if at least two-thirds (2/3) in amount of Equity Interests in such Class who have voted on the Plan have voted to accept the Plan.

### 6.3    Cramdown

To the extent that any Class is impaired under the Plan and such Class fails to accept the Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Debtor hereby requests that the Bankruptcy Court confirm the Plan in accordance with section 1191(b) of the Bankruptcy Code.

### 6.4    Elimination of Classes

Any Class that does not contain any Allowed Claims or any Claims temporarily Allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed not included in this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether such Class has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE VII. MEANS OF IMPLEMENTATION

### 7.1    Insider Settlement

The CRO, with assistance from the Debtor's professionals, has investigated potential claims and causes of action the Debtor may have against its managers and LLC membership interest holders and other insiders. As disclosed in the Statement of Financial Affairs, one insider, George Young, Jr., received $47,424.40 in loan payments, and three insiders, GDH, Crawford Rodgers, and Robert G. Bumstead, received $117,054.30 collectively in wages during the applicable preference lookback periods. The CRO believes all these potential preference defendants would present robust defenses arguing that these payments were made in the ordinary course of business and, as to the wages, that the potential defendants contributed significant uncompensated new value after receiving these payments. As a result, the CRO determined that

any recovery on related avoidance causes of action would likely cost more to obtain than the value of the recovery.

Nevertheless, the CRO has negotiated with these insiders to release their claims for unpaid wages and unpaid loan amounts due in exchange for releases of the estate's potential avoidance actions described above, as well as any other potential causes of action the estate might have against these insiders. GDH and Crawford Rodgers have wage claims against the estate that amount to at least $58,477.90 and include significant amounts that might be asserted with priority repayment rights ahead of general unsecured creditors. George Young, Jr. has also filed a proof of claim asserting a claim of $81,873.23 based on loans to the Debtor. By obtaining the release of these wage claims and the loan claim against the Debtor, which collectively amount to as much as $186,270.41, the Plan materially enhances recoveries to general unsecured creditors, both by reducing the number and amount of claims against the Debtor's estate and by avoiding the expense of litigation on avoidance actions and claims objections.

The unpaid wage claims primarily arise from uncompensated services GDH provided prepetition. GDH did not receive wages from the Debtor after April 9, 2022. GDH did receive compensation from Clifco for assisting with operating under Clifco's prepetition agreement with the Debtor. At all times, beginning on April 9, 2022, GDH made himself available to assist the Debtor and the CRO with whatever requests he received. GDH continued to contribute value to the Debtor through the Petition Date and has assisted the Debtor to arrange the license agreement that provides additional value to creditors from future license royalty income. GDH has also provided valuable assistance to the estate by connecting the CRO with potential equipment purchasers and drawing upon his long-term industry relationships to aid the CRO in negotiations with prior customers and creditors. Crawford Rodgers similarly contributed value to the Debtor after the appointment of the CRO for which he has not been compensated.

It is the CRO's business judgment that the releases contemplated in this section meet the requirements of bankruptcy rule 9019 and section 1123 of the Bankruptcy Code to settle the Debtor's claims described in this section of the Plan.

This Plan constitutes a settlement under Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code between the Releasing Parties on the one hand and the Released Parties on the other hand in complete and final resolution of all claims the Releasing Parties may have against the Released Parties (this "Settlement"). In consideration for: (i) the Released Parties' contributions to maximizing the value of the Debtor's assets, including marketing assets for sale, assisting in collection of accounts receivable, and supporting wind-down activities, and (ii) the Released Parties release of all Claims against the Debtor, including but not limited to any claims for repayment of money loaned, any unpaid wages or consulting fees, or other costs incurred in supporting the Debtor's Plan, the Debtor proposes to waive, release, and agree not to sue the Released Parties upon any claim or cause of action based on: (a) avoidance and recovery of the value of any other transaction between the Debtor or any of its affiliates and the Released Parties, (b) any of the Released Parties' acts or omissions related to the Debtor's management and business decisions prior to the Petition Date, (c) any of the Released Parties' acts or omissions related to the Debtor, the Chapter 11 Case, or any Claim; and (d) any and all claims and causes of action in existence as of the Effective Date, whether known or unknown, in existence or not in existence, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, held by the

Releasing Parties against the Released Parties. The Released Parties dispute that any such claims are or would be valid or have any merit and would contest them. This Settlement resolves such claims. This Settlement is not and shall not deemed to be an admission of liability of any kind on such claims, and all the Released Parties' rights are expressly reserved and preserved on any of such claims, with this Settlement carrying no preclusive effect of any kind whatsoever in any action or proceeding arising from or related in any way to the scope of the claims resolved and settled by the Settlement.

### 7.2    Suffolk Landlord Settlement

The CRO, with assistance from the Debtor's professionals, has investigated potential claims and causes of action the Debtor may have against the Suffolk Landlord. On the Petition Date, the Debtor moved to reject its lease with the Suffolk Landlord as it had completed removal of its valuable personal property from the Suffolk Landlord's premises. The Suffolk Landlord timely filed its proof of claim, claim number 18 in the Chapter 11 Case, as a nonpriority general unsecured claim in the amount of $376,057.96.

The Suffolk Landlord holds a security deposit in the amount of $20,955.73. The Suffolk Landlord's lease with the Debtor provides that the deposit may be used to satisfy past due rent. The Suffolk Landlord's claim states that on the Petition Date, the Debtor owed $61,658.36 in past due rent. The lease also obligated the Suffolk Landlord to pay Debtor tenant improvement allowance funds in the amount of $101,562.50 under certain conditions. The Suffolk Landlord's lease with the Debtor provides that the Suffolk Landlord is not obligated pay the Debtor the tenant improvement allowance funds in the event of a default under the lease.

Both the Debtor and the Suffolk Landlord seek to avoid the expense of litigating the Suffolk Landlord's claim. The Debtor has negotiated with the Suffolk Landlord a reduction in its claim in the amounts of the deposit and the tenant improvement allowance, resulting in a claim amount of $253,539.73. In exchange, the Debtor has agreed that the Suffolk Landlord shall have an allowed nonpriority general unsecured claim in the amount of $253,539.73.

The Suffolk Landlord will not file any other claims in this case other than the Suffolk Landlord Claim. The Suffolk Landlord's claims, actions, disputes, rights of setoff, and rights of reconsideration, if any, against the Debtor, the Reorganized Debtor, the Debtor's estate, and their predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, shareholders, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees are hereby unconditionally, absolutely, and irrevocably barred, except for the right to receive distributions on account of the Suffolk Landlord Claim under this Plan.

In consideration of the terms of the Plan, the Debtor agrees not to (1) object to the allowed claim of the Suffolk Landlord, or assert any other claims against the Suffolk Landlord and its predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, shareholders, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, investment bankers, consultants,

representatives, management companies, fund advisors, and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees arising prior to the Effective Date, arising under or resulting from a breach of the common law, any state or federal statute, breach of contract, tort, breach of fiduciary duty, or other theory, or, without limiting the forgoing, (2) pursue any Chapter 5 causes of action against the Suffolk Landlord. Upon entry of an Order Confirming the Plan, the Suffolk Landlord is authorized to immediately offset and apply the security deposit of $20,955.73 and the tenant improvement allowance of $101,562.50 against its claim without further Order of the Court, and the Suffolk Landlord shall be left with an allowed nonpriority general unsecured claim of $253,539.73 as set forth herein.

### 7.3    Preservation of Rights of Action; Settlement of Litigation Claims

Except as otherwise provided herein or in the Confirmation Order, or in any contract, instrument, release, indenture, or other agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, all Causes of Action shall be transferred to the Reorganized Debtor as provided by the Plan, and may be initiated, filed, enforced, abandoned, settled, compromised, released, withdrawn or litigated to judgment in accordance with the Plan. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. **No Person may rely on the absence of a specific reference in the Plan to any Cause of Action against it as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against it. All rights to prosecute any and all Causes of Action against any Person are expressly preserved, except as otherwise provided in the Plan.** Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtor and Reorganized Debtor expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or consummation of the Plan. For specific Causes of Action that the Debtor or Reorganized Debtor may have, please see Section 12.6 of this Plan.

### 7.4    Funding for Litigation of Causes of Action

The Reorganized Debtor shall have the right, authority, and discretion to use its cash on hand and to borrow funds for the purpose of pursuing the Causes of Action. Any such borrowing may be on any reasonable terms, including but not limited to providing for priority repayment of any resulting lender claim from the proceeds of such Cause of Action.

### 7.5    General Settlement of Claims

The Plan constitutes and evidences a compromise and settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019. In consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the

provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan.

### 7.6    Restructuring Transactions

On the Effective Date, the Debtor shall assign, transfer and deliver all property of the Estate to the Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances. On the Effective Date, the Debtor shall exit chapter 11 as the Reorganized Debtor, unless the Plan is confirmed under Bankruptcy Code section 1191(b), in which case the Debtor will receive its discharge on the Completion Date.

### 7.7    Corporate Action

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects.

### 7.8    Vesting of Assets

Except as otherwise provided in the Plan, on the Effective Date, the Estate's assets shall automatically transfer to and vest in the Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances, except for the Reorganized Debtor's obligations to make Distributions under this Plan.

### 7.9    Effectuating Documents; Further Transactions

On and after the Effective Date, the Debtor is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### 7.10    Exemption from Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment: (a) the creation of any mortgage, deed of trust, lien or other security interest under or pursuant to this Plan; (b) the release or assignment of liens; (c) the transfer of any assets of the Estate to the Reorganized Debtor; or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of, in connection with or pursuant to this Plan, including any restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any of the foregoing.

7.11    **Cooperation with the Reorganized Debtor**

All holders of Claims or Equity Interests shall fully cooperate with the Reorganized Debtor in the prosecution of the Causes of Action and objections to any Claims or Equity Interests. The Bankruptcy Court retains jurisdiction to order appropriate relief under this Plan provision.

## ARTICLE VIII. DISTRIBUTIONS

8.1    **Date of Distributions**

Unless otherwise provided in this Plan, any distributions or deliveries to be made under this Plan shall be made on the Effective Date or as otherwise contemplated herein. Thereafter, the Reorganized Debtor will make distributions no later than on the first, second, and third anniversaries of the Effective Date in accordance with this Plan. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.2    **Sources of Disposable Income**

All distributions made by the Reorganized Debtor to holders of Claims or Equity Interests shall be made from the Debtor's Disposable Income.

8.3    **Reorganized Debtor**

Upon the Effective Date, the Reorganized Debtor shall be managed by Brian Crisp of Lain Faulkner & Co., P.C. as Plan Administrator. Following the Completion Date, the Bankruptcy Court's entry of a Final Order discharging the Debtor, and the Bankruptcy Court's entry of a final decree closing this Chapter 11 Case, the Reorganized Debtor is, authorized to wind-down, dissolve or take such other action determined in its business judgment:

(a)    ***Plan Administrator Powers***. The Plan Administrator shall be empowered to effect all actions and execute all agreements, instruments and other documents necessary to perform his duties under the Plan, other order of the Bankruptcy Court, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions of the Plan.

(b)    ***Bond***. The Plan Administrator shall not be required to post any bond, surety, or other security for the performance of his duties.

(c)    ***Plan Administrator Compensation***. The Plan Administrator shall be entitled to reasonable compensation at the Plan Administrator's ordinary hourly rate of $425.00, as may be adjusted by Lain, Faulkner & Co., P.C. on an annual basis in accordance with its normal practice, and reimbursement of reasonable expenses. The Plan Administrator shall be authorized to pay, from Disposable Income, his reasonable compensation and reimburse his reasonable expenses as Plan Administrator without application to or approval from the Bankruptcy Court.

(d)    ***Plan Administrator Professionals***. The Plan Administrator may retain and reasonably compensate counsel and other professionals, including Wick Phillips Gould & Martin, LLP, Lain Faulkner & Co, P.C., and other professionals on such terms as the Plan Administrator deems necessary and proper to implement the provisions of the Plan, without application to or approval from the Bankruptcy Court.

(e)    ***Accounts***. The Plan Administrator may open and maintain one or more accounts with a financial institution as needed in his sole business judgment to manage the Reorganized Debtor's Disposable Income and distributions to creditors. The Plan Administrator may invest Disposable Income only in cash and Government Securities (as defined in section 2(a)(16) of the Investment Company Act of 1940, as amended).

(f)    ***Distributions***. The Plan Administrator is authorized, but not directed, to make the distributions contemplated in this Plan without further order of the Bankruptcy Court. The Plan Administrator may distribute that portion of Disposable Income necessary to compensate the Plan Administrator and reimburse his expenses, and to compensate the Plan Administrator's professionals and reimburse their expenses without further order of the Bankruptcy Court.

(g)    ***Indemnification***. The Plan Administrator and the Plan Administrator's agents and professionals (each, an "Indemnified Party" and collectively, the "Indemnified Parties"), shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Plan Administrator, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Plan Administrator, provided, however, such indemnity shall not apply to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from the willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts. The Reorganized Debtor shall pay any indemnification claim of the Indemnified Parties. Any Indemnified Party shall be entitled to advances from Disposable Income, to cover its actual and reasonably anticipated expenses of defending itself in any action threatened against or brought against it as a result of any act or omission, actual or alleged, of the Indemnified Party in its capacity as such. Within ten (10) business days after a written request by an Indemnified Party to the Plan Administrator, the Plan Administrator shall, in accordance with such request, (a) pay such expenses on behalf of the Indemnified Party from Disposable Income, (b) advance to the Indemnified Party cash in amount sufficient to pay such expenses from Disposable Income, or (c) reimburse the Indemnified Party for such expenses from Disposable Income; provided that the Indemnified Party shall provide an undertaking to repay promptly any amounts so paid, advanced, or reimbursed upon the entry of a Final Order finding that such Indemnified Party was not entitled to indemnity under this provision.

(h)     *Reliance*. The Plan Administrator is entitled to rely, in good faith, on the advice of his retained professionals and on information in the Reorganized Debtor's books and records.

(i)     *Tax Matters*. The Plan Administrator and his firm Lain, Faulkner & Co., P.C. will prepare and file all required documents, including tax returns and tax compliance matters.

### 8.4     Record Date for Distributions

At the close of business on the Distribution Record Date, the transfer ledgers or registers for Claims against the Debtor shall be closed, and there shall be no further changes in the record holders of such Claims. Neither the Debtor, the Reorganized Debtor, nor Plan Administrator shall have any obligation to recognize any transfer of any of the foregoing occurring after the Distribution Record Date, and shall be entitled instead to recognize for all purposes hereunder, including to effect distributions hereunder, only those record holders stated on the transfer ledgers or registers maintained by the Debtor as of the close of business on the Distribution Record Date.

### 8.5     Recipients of Distributions

All distributions to holders of Allowed Claims or Equity Interests under the Plan shall be made to the holder of the Claim or Equity Interest as of the Distribution Record Date. Changes as to the holder of a Claim or Equity Interest before the Distribution Record Date shall only be valid and recognized for distribution if notice of such change is filed with the Bankruptcy Court, in accordance with Bankruptcy Rule 3001 (if applicable) and served upon the Debtor and its counsel and, if applicable, the Reorganized Debtor.

### 8.6     Delivery of Distributions; Unclaimed Property

Subject to Bankruptcy Rule 9010, all distributions under the Plan shall be made at the address of each holder of an Allowed Claim as set forth in the books and records of the Debtor or the Reorganized Debtor, as applicable, unless the Debtor or the Reorganized Debtor, as applicable, has been notified in writing of a change of address. If any distribution to the holder of an Allowed Claim is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor or the Reorganized Debtor, as applicable, is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days after the date of the distribution in question. After such 90th day, and notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary (i) all unclaimed property or interest in property in respect of the distribution in question shall revert to the Reorganized Debtor, and thereafter be distributed Pro Rata to the holders of Allowed Claims in accordance with the terms of this Plan, and (ii) the Claim of any holder with respect to such unclaimed property or interest in property shall be discharged and forever barred.

### 8.7 Means of Payment

All distributions made pursuant to the Plan shall be in Cash, except to the extent the Reorganized Debtor returns Collateral in satisfaction of a Secured Claim.

### 8.8 Setoffs and Recoupment

The Debtor or the Reorganized Debtor, as applicable, may, but shall not be required to, setoff against or recoup from any Claim any rights to payment that the Estate may have or may have had against the holder of such Claim. Neither the failure of the Debtor or the Reorganized Debtor, as applicable, to setoff or recoup, nor the Allowance of any Claim shall constitute a waiver or release by the Estate or the Reorganized Debtor of any right to payment, or right of setoff or recoupment.

### 8.9 Distributions After Effective Date

Distributions made pursuant to this Plan after the Effective Date to holders of Disputed Claims that are not Allowed as of the Effective Date, shall be deemed to have been made on the Effective Date. After any initial distribution, the Reorganized Debtor shall make additional interim distributions to holders of Allowed Claims and Allowed Equity Interests at such time as the Reorganized Debtor may deem appropriate, in accordance with the terms of this Plan.

### 8.10 Withholding and Reporting Requirements

In connection with this Plan and any instruments issued under this Plan, any party issuing any instrument or making any such distribution under this Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Equity Interest that is entitled to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any applicable tax obligations, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under this Plan to any holder of any Allowed Claim or Allowed Equity Interest has the right, but not the obligation, to not issue such instrument or make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

### 8.11 No Postpetition Interest

Unless otherwise specifically provided for in this Plan or in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim or Equity Interest shall be entitled to interest accruing on or after the Petition Date.

### 8.12 Time Bar to Payments

Checks issued by the Reorganized Debtor under this Plan shall be null and void if not negotiated within ninety (90) days after the date of issuance. Requests for reissuance of any check

shall be made in writing directly to the Reorganized Debtor by the person to whom such check was originally issued. Any request for re-issuance of a voided check must be made on or before the end of the 90-day period referenced in this Section 8.12. After such 90-day period, if no request for re-issuance of a voided check was timely made, such amounts shall constitute unclaimed property and be treated in accordance with Section 8.6 of this Plan, and all Claims in respect of such void checks shall be discharged and forever barred.

### 8.13    De Minimis Distributions

Neither the Debtor nor the Reorganized Debtor shall have any obligation to make a distribution that is less than Ten Dollars ($10) in Cash. If an interim distribution to the holder of an Allowed Claim or Equity Interest is less than $10, such distribution shall be held for future distributions. If the final distribution to any holder of an Allowed Claim or Equity Interest is less than $10, such amount shall become and constitute unclaimed property and be treated in accordance with Section 8.6 of the Plan.

## ARTICLE IX. PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

### 9.1    Objections to Claims

Except insofar as a Claim or Equity Interest is Allowed under the Plan or pursuant to Final Order of the Bankruptcy Court, the Debtor or the Reorganized Debtor shall be entitled to object to Claims, including objections seeking reclassification or subordination of such Claims or Equity Interests. Any objections to Claims or Equity Interests shall be served and filed by the Objection Deadline. Any Claim or Equity Interest as to which an objection is timely filed shall be a Disputed Claim or Equity Interest.

### 9.2    No Distributions Pending Allowance

If a timely objection is made with respect to any Claim or Equity Interest, no payment or distribution under the Plan shall be made on account of such Disputed Claim or Equity Interest unless and until such Disputed Claim or Equity Interest becomes Allowed.

### 9.3    Distributions After Allowance

To the extent that a Disputed Claim or Equity Interest ultimately becomes an Allowed Claim or an Allowed Equity Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Equity Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Equity Interest becomes a Final Order, the Reorganized Debtor shall provide to the holder of such Claim or Equity Interest the distribution (if any) to which such holder is entitled under this Plan as of the Effective Date.

### 9.4    Disallowance of Late Filed Claims

Unless otherwise provided in a Final Order of the Bankruptcy Court, any Claim or Equity Interest for which a proof of claim or interest is filed after the applicable Bar Date shall be deemed

disallowed. The holder of a Claim or Equity Interest that is disallowed pursuant to this Section 9.4 shall not receive any distribution on account of such Claim or Equity Interest, and neither the Debtor nor the Reorganized Debtor shall need to take any affirmative action for such Claim or Equity Interest to be deemed disallowed.

## ARTICLE X. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 10.1   Rejection of Contracts and Leases

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, the Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned, or rejected by the Debtor, (ii) previously expired or terminated pursuant to its own terms, or (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtor on or before the Confirmation Date. The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

### 10.2   Inclusiveness

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease.

### 10.3   Claims Based on Rejection of Executory Contracts or Unexpired Leases

All Claims arising out of the rejection of executory contracts and unexpired leases (if any) must be served upon the Debtor or Reorganized Debtor, as applicable, and its counsel within thirty (30) days after the earlier of (i) the date of entry of an order of the Bankruptcy Court approving such rejection or (ii) the Effective Date. Any Claims not filed within such time shall be forever barred from assertion against the Debtor, the Estate, its property and the Reorganized Debtor.

## ARTICLE XI. CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### 11.1   Conditions to Effective Date of Plan

The Effective Date of the Plan shall not occur until each of the following conditions precedent have been satisfied or waived:

> (a)   The clerk of the Bankruptcy Court shall have entered the Confirmation Order on the Bankruptcy Court's docket for the Chapter 11 Case; and

> (b)   The Confirmation Order shall have become a Final Order; and

(c)      All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered by the parties thereto, and, in each case, all conditions to their effectiveness shall have been satisfied or waived as provided therein.

Within five (5) Business Days of the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date.

### 11.2      Waiver of Conditions Precedent

Any of the foregoing conditions (with the exception of the conditions set forth in Section 11.1 of this Plan may be waived by the Debtor without notice to or order of the Bankruptcy Court. The Debtor may assert a failure to satisfy or waiver of any condition regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right will be deemed an on-going right that may be asserted at any time.

### 11.3      Effect of Failure of Conditions

If the foregoing conditions have not been satisfied or waived in the manner provided in Sections 11.1 and 11.2 hereof, then (i) the Confirmation Order shall be of no further force or effect; (ii) no distributions under the Plan shall be made; (iii) the Estate and all holders of Claims against or Equity Interests in the Debtor shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all of the Estate's obligations with respect to Claims and Equity Interests shall remain unaffected by the Plan; (v) nothing contained in this Plan shall be deemed to constitute a waiver or release of any Claims by or against or Equity Interests by or in the Estate or any other Person or to prejudice in any manner the rights of the Estate or any Person in any further proceedings involving the Debtor or the Estate; and (vi) this Plan shall be deemed withdrawn. Upon such occurrence, the Debtor shall file a written notification with the Bankruptcy Court and serve it on the parties appearing on the service list maintained in the Chapter 11 Case.

### 11.4      Reservation of Rights

The Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtor with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Estate or any other party with respect to any Claims or Equity Interests or any other matter.

## ARTICLE XII. EFFECT OF CONSUMMATION

### 12.1      Discharge of Claims and Interests in the Debtor

Upon the Effective Date, or only in the event the Plan is confirmed under Bankruptcy Code section 1191(b), the Completion Date, and in consideration of the distributions to be made under this Plan, except as otherwise provided in this Plan or in the Confirmation Order, each holder (as well as any trustee or agent on behalf of such holder) of a Claim, where such Claim or Interest has

been fully paid or otherwise satisfied in accordance with this Plan, and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted under § 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Except as otherwise provided in this Plan, all such holders of Claims, and their affiliates shall be forever precluded and enjoined, pursuant to §§ 105, 525, and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtor or the Reorganized Debtor.

### 12.2    Injunction against Interference with Plan

Upon the entry of the Confirmation Order, all holders of Claims or Equity Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation of the Plan or the occurrence of the Effective Date.

### 12.3    Exculpation

Neither the Exculpated Parties nor any of their respective present or former members, managers, officers, directors, employees, equity holders, partners, affiliates, funds, advisors, attorneys or agents, or any of their predecessors, successors or assigns, shall have or incur any liability to any holder of a Claim or Equity Interest or any other party-in-interest, or any of their respective agents, employees, equity holders, partners, members, affiliates, funds, advisors, attorneys or agents, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the administration of the Chapter 11 Case, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, and shall be deemed to have acted in good faith in connection therewith and entitled to the protections of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary contained in this Plan, this Section 12.3 shall not exculpate any party from any liability based upon gross negligence or willful misconduct. The exculpation is provided to the maximum extent permitted by applicable law, and no exculpation shall be given in contravention of applicable law including *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm.* (*In re Pacific Lumber Co*.), 584 F.3d 229 (5th Cir. 2009) and its progeny to the extent applicable.

### 12.4    Debtor and Estate Releases

As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, the service of the Released Parties to facilitate the administration of the Estate, a substantial recovery for holders of Allowed Claims, and the implementation of this Plan, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged by the Releasing Parties on behalf of themselves and their respective successors, assigns, and representatives and any and all other entities that may purport to assert any cause of action derivatively, by or through the Releasing Parties, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, or liabilities, whatsoever, including any derivative

claims, asserted or assertable on behalf of the Releasing Parties, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right, or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Estate, the Chapter 11 Case, the Settlement, the subject matter of, or the loans or other transactions or events giving rise to, any Claim or Equity Interest, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Case, the restructuring transactions, the negotiation, formulation, or preparation of this Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to this Plan, or any other act or omission, transaction, agreement, event, or other occurrence, other than claims or causes of action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud, gross negligence, and willful misconduct.

### 12.5    Injunction and Stay

(a)    Except as otherwise expressly provided in this Plan, all Persons or entities who have held, hold, or may hold Claims or causes of action against or Equity Interests in the Debtor or any Released Party are permanently enjoined, from and after the Effective Date, or, only in the event the Plan is confirmed under Bankruptcy Code section 1191(b), the Completion Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or cause of action against or Equity Interest in the Estate or any entity released, discharged or exculpated hereunder, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Estate with respect to any such Claim, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Estate or against the property held by the Reorganized Debtor (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Estate, or against the property or interests in property of the Estate with respect to any such Claim or Equity Interest, or (v) pursuing any Claim or causes of action released under the Plan.

(b)    Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

(c)    The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, or liabilities released pursuant to this Plan, including, without limitation, the claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities released or exculpated in this Plan.

**12.6     Preservation of Claims**

(a)     Except as otherwise provided herein, as of the Confirmation Date, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, any action, cause of action, claim, liability, obligation, right, suit, debt, sum of money, damage, judgment, Claim, and demand whatsoever, whether known or unknown, at law, in equity, or otherwise, including causes of action under Chapter 5 of the Bankruptcy Code, but not including any causes of action against the Exculpated Parties or the Released Parties (collectively, "Causes of Action") owned by or otherwise accruing to the Debtor or the Estate shall constitute assets of, and shall immediately be transferred to and vest in, the Reorganized Debtor. Thereafter, the Reorganized Debtor, as a representative of the Debtor and the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, shall have sole and full authority to commence and prosecute Causes of Action for the benefit of the holders of Claims and Equity Interests.

(b)     The Debtor owns the following Causes of Action:

(i)     Claims against Clifco Spice Sales, Inc. and Kevin Clifton for breach of contract, money had received, replevin, quantum meruit, appropriation of intellectual property, interference with the Debtor's exclusive usage of intellectual property, and other claims arising from the Debtor's prepetition business with Clifco and Clifco's prepetition actions and omissions.

(ii)     Claims against KyBod Group LLC dba Sriracha2Go for breach of contract, collection of accounts receivable, and reimbursement of costs arising from failure to pay outstanding invoices and failure to retrieve products abandoned on the Debtor's premises.

(iii)     Claims against HelloFresh, including HelloFresh SE, HelloFresh Group, Grocery Delivery E-Services USA Inc. dba HelloFresh, and any and all of their affiliates, parents, subsidiaries, or related entities, for breach of contract, reimbursement of costs, and other claims arising from the Debtor's prepetition business with HelloFresh and HelloFresh's prepetition actions and omission.

**12.7     Compromise of Controversies**

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019 and section 1123(b)(3)(A).

## ARTICLE XIII. RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine pending applications for the assumption, assignment or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)     To determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Case and grant or deny any application involving the Debtor or the Estate that may be pending on the Effective Date or that are retained and preserved by the Reorganized Debtor herein;

(c)     To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are effected as provided in the Plan;

(d)     To hear and determine any timely objections to Administrative Expense Claims or to proofs of Claim and Equity Interests, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Disputed Claim or Equity Interest, in whole or in part;

(e)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or maintain the integrity of the Plan following consummation;

(g)     To consider any amendments to or modifications of the Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(h)     To hear and determine all requests for payment of Fee Claims;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the documents that are ancillary to and aid in effectuating the Plan or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(k)     To hear any other matter not inconsistent with the Bankruptcy Code;

(l)     To hear and determine all disputes involving the existence, scope, and nature of the injunctions, exculpations and releases granted hereunder;

(m)     To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Plan;

(n)    In the event the Plan is confirmed under Bankruptcy Code section 1191(b), to enter a discharge order;

(o)    To enter a final decree(s) closing the Chapter 11 Case.

## ARTICLE XIV. MISCELLANEOUS

### 14.1    Payment of Statutory Fees

All fees payable under 28 U.S.C. § 1930 shall be paid by the Reorganized Debtor from Disposable Income on the Effective Date and thereafter, as appropriate.

### 14.2    Filing of Additional Documents

The Debtor or Reorganized Debtor may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 14.3    Schedules, Exhibits and Plan Supplement Incorporated

All exhibits, schedules, and supplements to the Plan are incorporated into and are a part of the Plan as if fully set forth herein.

### 14.4    Amendment or Modification of the Plan

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor or Reorganized Debtor, as applicable, at any time prior to or after the Confirmation Date. Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified; *provided*, *however*, that any holders of Claims and Equity Interests who were deemed to accept the Plan because such Claims and Equity Interests were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims and Equity Interests continue to be unimpaired. The Debtor may solicit acceptances of any altered, amended, or modified Plan from holders of Claims.

### 14.5    Inconsistency

In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 14.6    Expedited Tax Determination

The Debtor of the Reorganized Debtor, as successor to the Debtor, may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtor for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

### 14.7     Binding Effect

Except as otherwise provided in section 1141(d) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of this Plan and Confirmation Order shall be binding upon and inure to the benefit of the Debtor, the Estate, the Released Parties, the Releasing Parties, any holder of any Claim or Equity Interest, or any Person named or referred to in this Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, as to the binding effect, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by this Plan and Confirmation Order.

### 14.8     Severability

If the Bankruptcy Court determines that any provision of this Plan is unenforceable either on its face or as applied to any Claim or Equity Interest, the Debtor may modify this Plan in accordance with Section 14.4 hereof so that such provision shall not be applicable to the holder of such Claim or Equity Interest. Any determination of unenforceability shall not (i) limit or affect the enforceability and operative effect of any other provisions of this Plan; or (ii) require the re-solicitation of any acceptance or rejection of this Plan unless otherwise ordered by the Bankruptcy Court.

### 14.9     No Payment of Attorneys' Fees

Except for the fees of Professional Persons, no attorneys' fees shall be paid by the Estate with respect to any Claim or Equity Interest unless otherwise specified in this Plan or a Final Order of the Bankruptcy Court.

### 14.10     Notices

All notices, requests, and demands to or upon the Estate to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

JESS HALL'S SERENDIPITY, LLC
Debtor-in-Possession
Attn. Brian Crisp
400 N. St. Paul St., Ste. 600
Dallas, TX 75201

with a copy to:

WICK PHILLIPS GOULD & MARTIN, LLP
Attention: Scott D. Lawrence
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
scott.lawrence@wickphillips.com

**14.11    Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

JESS HALL'S SERENDIPITY, LLC

*/s/ Brian Crisp*
By Brian Crisp


WICK PHILLIPS GOULD & MARTIN, LLP

*/s/ Scott D. Lawrence*
Scott D. Lawrence, Tex. Bar No. 24087896
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789
scott.lawrence@wickphillips.com

and

Jason M. Rudd, Tex. Bar No. 24028786
Catherine A. Curtis, Tex. Bar No. 24095708
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255
jason.rudd@wickphillips.com
catherine.curtis@wickphillips.com

COUNSEL FOR DEBTOR AND
DEBTOR IN POSSESSION

# <u>Exhibit A</u>

Jess Hall's Serendipity LLC
Liquidation Analysis

| | Notes | Book Value on Petition Date | Chapter 11 | % Recovery | Chapter 7 | % Recovery |
|---|---|---|---|---|---|---|
| **Assets:** | | | | | | |
| Cash in Banks | 1 | $ 293,070 | $ 76,150 | | $ 76,150 | |
| Accounts Receivable | 2 | 73,251 | 25,502 | | 25,502 | |
| Furniture and Equipment | 3 | 875,507 | 300,000 | | 300,000 | |
| Future IP Licensing Revenue | 4 | - | 89,199 | | 8,920 | |
| Causes of Action | 5 | 23,761 | Unknown | | Unknown | |
| Retainers | 6 | 112,127 | 112,127 | | 112,127 | |
| Total Assets Available for Distribution | | | $ 602,978 | | $ 522,699 | |
| | | | | | | |
| **Unclassified Claims:** | | | | | | |
| Administrative | 7 | | 10,000 | | 10,000 | |
| Chapter 11 Professional Fees | 8 | | 85,980 | | 85,980 | |
| Chapter 7 Trustee | 9 | | N/A | | 29,385 | |
| Plan Trustee | 10 | | 25,000 | | N/A | |
| Accounting/Tax Returns | 10 | | 25,000 | | 25,000 | |
| Legal Fees | 10 | | 30,000 | | 50,000 | |
| | | | | | | |
| **Claims:** | | | | | | |
| Secured | 11 | 57,341 | 57,341 | 100% | 57,341 | 100% |
| Priority | 11 | 15,150 | - | N/A | 15,150 | 100% |
| Unsecured: | | | | | | |
| Convenience Class | 12 | 55,522 | 13,881 | 25% | N/A | |
| Claims > $5,000 | 12 | 2,355,397 | 355,777 | 15% | 249,843 | 9% |
| Total Assets Distributed | | | $ 602,978 | | $ 522,699 | |

Notes:

1 Represents cash in banks at March 31, 2023 less estimated costs paid between April 1, 2023 and the Confirmation Date.

2 Book value represents recorded accounts receivable less bad debt reserve. From the Petition Date to March 31, 2023, the Debtor collected approximately $25,400 of accounts receivable utilizing existing customer relationships without the need for litigation expenses.

3 Book value represents cost basis of furniture and equipment less accumulated depreciation. The Debtor estimates that $300,000 will be received from the sale of the furniture and equipment at auction.

4 Chapter 11 recovery represents estimated royalties to be received from GWH-1, LLC over a three year period under the licensing agreement of the Debtor's IP assets approved by the Court in February 2023. Chapter 7 recovery assumes the Chapter 7 Trustee will monetize the future royalties in the first year at 10% of the estimated royalties.

5 Represents claims against Clifco Spice Sales, Inc and HelloFresh. Book value on the Petition Date only includes unreimbursed expenses owed by Clifco and does not include inventory used by Clifco.

6 Book value represents retainers held by Lain Faulkner, Wick Phillips and Baker Heath at the Petition Date.

7 Represents estimated administrative expense claims.

8 Represents estimated professional fees claims on the Confirmation Date.

9 Calculated in accordance with Section 326 based upon total estimated disbursements.

10 Assumes the estate will be closed in 2026 upon conclusion of the licensing agreement. Chapter 11 legal fees will be significantly less due to the familiarity with Causes of Action and the use of existing relationships.

11 Secured and priority claims represent 2022 and 2023 personal property taxes and unpaid wages of George (Dub) Hall. The Chapter 11 Plan will obtain waiver of Hall's priority wage claim.

12 Unsecured claims include Scheduled or filed claims of trade vendors and insiders on the Petition Date plus an estimated rejection claim for the Shotts landlord. The Chapter 11 Plan will obtain a waiver of amounts owed to insiders increasing recovery to trade vendors and landlords. The Chapter 11 Plan also includes a Convenience Class which will reduce the administration of the estate in future distributions.